and I understand we have two students from Seton Hall who will be arguing on behalf of the appellate this morning and you've decided to divide time between you? That's correct. So we're ready to proceed. Because we're in this unusual format, you both are arguing for four minutes. We'll give you two minutes to start and then we'll jump in with questions. Okay, thank you. Good morning. May it please the court. My name is Sarah Ungeheyer on behalf of Michael Yancey. In a moment, my co-counsel will be addressing Yancey's 14th Amendment claim against the medical staff that was improperly dismissed to Esponte, as well as the subjective prong of his claim against Officer Robertson. I will first address the objective prong of the claim against Officer Robertson, the only genuine dispute between the parties. It's whether Yancey had an objectively serious medical need in the form of difficulty breathing on the night of April 14th, or if as defendants argue, his only condition was a mild skin rash. The primary issue before the court is whether there is a material dispute of fact in the record as to whether Yancey was suffering from more than just a skin rash, whether his allegations rose to the level of an objectively serious medical condition. Summary judgment here should not be upheld because abundant evidence before the court, including deposition testimony and a sworn verified complaint show that Yancey was suffering from a serious medical need. Most notably, difficulty breathing from an apparent severe allergic reaction. There was ample evidence for a reasonable juror to find that Yancey suffered from a serious medical condition. Yancey's sworn verified complaint, which should be treated as an affidavit for summary judgment purposes and should be considered in determining whether material issues of fact exists, states at 2 a.m. on April 14th, Yancey repeatedly called out to Robertson. I can't breathe. Can you please take me down to medical? I've been having this issue with this outbreak. I have pus and blood coming out. I can't breathe. Can you please help me? On page 106 of the appendix, and this is not in dispute. Further, Yancey's sworn verified complaint, as well as his depositions, include his testimony under oath at least eight times that he couldn't breathe on the night of April 14th. He stated, I can't breathe. I'm scared I'm going to die. When he finally received medical treatment 18 hours later, an ACCF doctor told Yancey, you're breaking out because you were given the wrong medication. You're having a severe outbreak and you're having some respiratory difficulties. On page 108 of the appendix. What has to be a reasonable jury here and correct me if I'm misunderstanding, but a reasonable jury has to be able to find that he was suffering from an objectively serious condition, a matter of urgency that could produce death or extreme pain. And so that he needed immediate medical attention. It wasn't enough to just put in a note for him to be seen next day. He's crediting his testimony when he says I can't breathe. Is that enough? Even with the other evidence that we know he had an allergic reaction. I mean, sometimes people say, I can't breathe. I'm having trouble breathing. And they go to their doctor and the doctor says this is not a big problem here. Take this, take this medicine. Sometimes it's a matter of more urgency. And there's no medical evidence here that says that evening, he was suffering from severe respiratory distress. So help me understand why is it enough to just take his articulation of the symptoms absent some medical experts in the record? Yes, Your Honor, there are two answers to that question. The first being that, in fact, the record does support that he was suffering from a severe allergic reaction based on the fact that he was then taken off the medication prescribed Benadryl and prednisone and admitted to the infirmary. But more importantly, the issue is that he was not able to provide evidence of his severe need on the night in question for the exact reason that he's bringing this claim, which is the fact that he did not receive medical attention and was therefore not able to document the fact that he was suffering from difficulty breathing at the time that he requested care. So this makes it a lot more possible. Counselor, I understand that part, but he'd been receiving this medicine for some time. I mean, it wasn't just that day, right? He'd been getting it for a period of time before that. And presumably, and he'd exhibited rashes and skin problems up to that point. This was the first time there was an I can't breathe component to this. And then later on when he was examined, it turned out that they at that time. So he might've had a, for some reason, it might've been panic about not going to the medical facility because he really wanted to do it subjectively. But, and then made him have difficulty breathing. I don't know what it is, but it's not consistent. The respiratory problems are not consistent with the effects of this particular, the allergic effects of this appendix. It states that the doctor had recorded that it was worsening over two weeks. So although there is some question as to what the exact allergic reaction was at this point, it cannot be discounted as summary judgment because the only evidence we have here is his sworn testimony that he could not breathe on the night of April 14th. And Robertson has put forth no evidence contradicting any of the empty statements. He wasn't seen until 18 hours later. So the fact that 18 hours after he requested care, he was still breathing is not evidence that he was not suffering from a serious medical condition at 2 a.m. There's also when he was seen 18 hours later or 16 hours later, he didn't at that time tell the medical staff, listen, I had this very severe, I couldn't breathe last night, or at least that's not reflected in the medical records. Am I right about that? Uh, Your Honor, I'm not. Yes, Your Honor. At the time that he was seen 18 hours later, it was not clear that he was suffering from any respiratory difficulties. However, he stated repeatedly in his deposition that he had in fact been suffering from this respiratory distress the night that he asked for care. But his symptoms here were consistent. I guess my question was slightly different. Is there any indication in the medical records when he was seen in the infirmary 18 hours later, any indication in those records that he at that time reported last night I suffered a very severe respiratory incident? No, Your Honor. The records, the medical records at least, are only the notations by the doctor that describe what he was suffering from at that time 18 hours later. But the doctor informed him, you're reacting to the wrong medication, you're having some respiratory difficulties, which he reported in his deposition. The fact that 18 hours later, he did not report I'm having respiratory difficulties, however, does not make it implausible or impossible that on the night of April 14, he was in fact suffering from respiratory. There's a shake of it. He also reported that on that night, he had open wounds covering his body and pus and blood, and that he looked like a person out of the living dead. But 18 hours, 16 hours later, that doesn't seem to have been borne out. I mean, how did open wounds close in 16 hours? Why wouldn't it make sense for medical people or for a jury to conclude that everything that he was saying was exaggerated out of panic, which is perfectly sensible? Your Honor, the jury could conclude that the issue about whether or not he had this specific pus and blood from certain parts of his body was or was not present. However, there is no evidence showing that he was not suffering from respiratory distress. And the record does indicate that he had a worsening rash, but that is not the material dispute of fact that would conclude whether or not he was in need of immediate care on the night of April 14. And a rash... Your point is that they didn't take him there for... It was 14 hours, I believe. I think Judge Livingston was correct. 2 a.m. But then the next morning, he's there and the prison is operating under normal circumstances. There are guards nearby and so forth. And there's nothing in the record to indicate that he complained at that time when he woke up the next morning. He waited all day and then went to be checked. Is there anything in the record that shows that there was any complaint made between 2 a.m. and the time that he went to the doctor? Your Honor, the record states only that 18 hours later at 6.15, Dr. Misaba then saw him. This is cited at 44-10 on page 122 of the record. And that was when they took him off of the medication that he had been prescribed. And at that point, they prescribed him Benadryl. But it is not clear that he was seen before then. But it is also not... I don't mean seen. I don't mean seen. There's no evidence in the record that he complained of respiratory problems to a corrections officer during the day while he was waiting to be seen. Yes, Your Honor. Yes. Because as the issue before the court is whether Robertson recklessly disregarded this care, the record only states that there was one interaction between Robertson and Mr. Yancey. And then he saw no more of him the rest of the night. This does not indicate that Yancey didn't keep asking for help, which in his deposition, he states that he did repeatedly continue to ask for help, but that he received no responses from a severe medical need based only on Yancey's admission that he was not vomiting, convulsing, or unconscious. Robertson doesn't try to argue that Yancey's claims wouldn't be viable if the record showed he had difficulty breathing. He's only arguing that there's no evidence that he couldn't breathe, that no possible reasonable jury could find that he could not breathe on the night of April 14th. And that is simply not the truth. Yancey's a finder of facts that assesses his credibility at trial, but they can't be disregarded on a motion for summary judgment. Robertson is in fact- Thank you. We'll hear from your co-counsel. Thank you very much. Thank you. Thank you, Your Honor. Good morning. Alexander Corson of the Dean Paul Center for Social Justice on behalf of Michael Yancey. Your Honor, as my co-counsel has just explained, Yancey did indeed have a serious medical need on the evening of April 14th in that he was having severe breathing difficulties. And to add to the subjective prong, Robertson really only makes one argument, and that is that Yancey didn't have breathing difficulties and he simply had a rash. And therefore there was no serious medical need for Robertson to have recklessly disregard. But because at minimum there's a dispute of facts as Yancey's breathing difficulties, Robertson's only argument as to the subjective prong and the basis for district court's grand summary judgment on this issue must fail and the discourse should be reversed. Now, Your Honors, Yancey also brought a claim against the medical staff for prescribing him the medication despite clear documentation that he was allergic to it in his medical records. And the district court erred when it dismissed pre-service on defendants because it applied the wrong standard. It applied the Eighth Amendment deliberate indifference standard rather than the applicable 14th Amendment recklessness standard as this court had held in Darnell four months before the dismissal. Now, in order for the district court's sua sponte dismissal to have been proper, they needed to find that there was no arguable basis for Yancey's claim against the medical staff despite their charge under to construe his submissions charitably and to raise the strongest arguments they suggest. Now, setting aside the district court's application of the Eighth Amendment standard, under the 14th Amendment standard, Yancey's claim was plainly viable. Under the 14th Amendment standard, Yancey would need to show or at least claim that prison doctors knew or should have known that giving him the medication would threaten his health and safety. And he alleges exactly that in his complaint. He says that doctors knew his allergy because it was clearly recorded in his record and they prescribed it to him anyway. And then he went on to have a severe allergic reaction. Now, there were not individual doctors named in the complaint, correct? I mean, you're saying now that you would like the opportunity to substitute Dr. Masaba for the corporate medical providers who were named? Yes, Your Honor. That brings me to my final point. Assuming the court agrees with us that the sua sponte dismissal was inappropriate, that does raise the question of whether Yancey should be allowed to amend and whether in order to substitute the individual doctor and then, of course, whether that amendment can relate back under 15C. And in order for it to relate back under 15C, Yancey would have need to have made a legal or factual mistake within the meaning of the rule. Unfortunately, this court's precedent in Soto versus Brooklyn Correctional Facilities is exactly on point. Soto said that naming an institutional defendant rather than the individual is exactly the type of mistake contemplated by a rule 15C. And so we would ask on remand that Yancey be allowed to amend and substitute the individual medical staff members that were responsible for his severe allergic reaction and that Yancey should be allowed to move that the amendment relates back. If there are no further questions... And the theory is that these doctors, or Dr. Masaba in particular, should have known, acted recklessly and not knowing that he was allergic and this multivitamin they prescribed caused all his problems. I'm sorry. Your Honor's asking if the theory is that Dr. Masaba or whoever prescribed his treatment was reckless in doing so? Yes. Yes, that's the theory, Your Honor. So anyway, for these reasons, since Yancey submitted far more than an arguable basis, we would ask that this response be reversed and that he be allowed to amend to relate back. And if there are no further questions, we thank the court for its time. Thank you both very much. This was an assignment that Sutton Hall took on pro bono on behalf of the court, and we thank you for your service. Well done. Thank you. We'll take the matter under advisement.